UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 26-60117-pmb |
| JDS-Q Services, LLC | ) | Chapter 7 |
| Debtor. | ) | |
| BD Capital SE LLC, | ) | |
| Movant, | ) | |
| v. | ) | CONTESTED MATTER |
| JDS-Q Services, LLC, Involuntary Debtor, and Derek Jones, Petitioner, | ) | |
| Respondents. | ) | |

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that BD Capital SE LLC has filed a motion for relief from stay (the "Motion") and related papers with the Court seeking an order lifting the automatic stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion at 1:00 P. M. on November 2, 2026 in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to

consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: October 8, 2026

BUCHALTER LLP

<u>/s/ Brian S. Goldberg</u>
BRIAN S. GOLDBERG
Georgia Bar No. 128007
3475 Piedmont Road NE
Suite 1100
Atlanta, GA 30305
(T) 404-832-7667
(E) BGoldberg@buchalter.com
Attorney for Movant

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 26-60117-pmb |
| | ) | |
| JDS-Q Services, LLC | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| BD Capital SE LLC, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| JDS-Q Services, LLC, Involuntary Debtor, and Derek Jones, Petitioner, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**CREDITOR BD CAPITAL SE LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

BD Capital SE, LLC ("Movant"), by and through undersigned counsel, respectfully moves this Court for relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), and in support thereof shows the Court as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. Movant, BD Capital SE LLC ("BD Capital"), is a secured creditor of the alleged debtor, JDS-Q Services, LLC (the "Debtor").

**5.** On November 25, 2024, the Debtor executed and delivered to BD Capital a Commercial Promissory Note in the original principal amount of $1,660,528.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit "A"** and incorporated herein by reference.

6. The Note was secured by a Commercial Deed of Trust, Security Agreement, Fixture Filing and Assignment of Leases and Rents encumbering real property located at 1035 Lighthouse Court, Grand Prairie, Texas 75104 (the "Property"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "B**" and incorporated herein by reference.

7. The Deed of Trust grants BD Capital a first-priority lien against the Property and related collateral and expressly authorizes BD Capital to exercise foreclosure remedies upon the occurrence of an event of default.

8. The Note matured on June 1, 2026, at which time all amounts owing became due and payable in full. The Debtor failed to satisfy the indebtedness upon maturity.

9. The indebtedness remains due and owing.

10. On July 31, 2026, Derek Jones filed the above-captioned involuntary Chapter 7 petition against the Debtor. No order for relief has been entered.

11. More than two months have elapsed since the filing of the involuntary petition, yet no order for relief has been entered.

12. The filing of the involuntary petition occurred after the loan maturity date and after the Debtor's payment default.

13. BD Capital seeks authority to exercise its contractual and state-law remedies with respect to the Property, including foreclosure proceedings and any related actions necessary to liquidate its collateral.

**INDEBTEDNESS OWING TO MOVANT**

14. The Note matured on June 1, 2026, and the entire indebtedness became immediately due and payable.

15. The Debtor failed to satisfy the indebtedness upon maturity and remains in continuing default.

16. The indebtedness due and owing to Movant consists of, good through October 15, 2026:

a. Unpaid principal balance of $1,600,926.60;

b. Accrued regular interest of $195,946.75;

c. Accrued default interest of $120,903.31;

d. Accrued late charges of $19,594.67; and

e. Recoverable charges, fees, protective advances, insurance costs, and expenses totaling $29,450.20.

17. As of October 15, 2026, the total indebtedness due and owing to Movant was approximately $1,967,562.83, exclusive of additional interest, default interest, attorneys' fees, costs, expenses, and other recoverable amounts continuing to accrue thereafter.

18. According to Dallas County tax records for tax year 2026, the Property has an assessed market value of approximately $1,000,000.

19. The indebtedness due to Movant exceeds the apparent value of the Property by approximately $967,562.83, exclusive of continuing accruals.

20. Accordingly, the Debtor has no equity in the Property.

**RELIEF IS WARRANTED FOR CAUSE UNDER § 362(d)(1)**

21. Section 362(d)(1) provides that relief from the automatic stay shall be granted for cause.

22. Cause exists because the Note matured on June 1, 2026, and the entire indebtedness became immediately due and payable before commencement of this involuntary bankruptcy proceeding.

23. The Debtor failed to satisfy the indebtedness at maturity and remains in continuing default.

24. As of October 15, 2026, the indebtedness due and owing to Movant totaled approximately $1,967,562.83, exclusive of continuing accruals.

25. Movant is not adequately protected because interest, default interest, fees, costs, expenses, and protective advances continue to accrue while Movant remains unable to fully exercise its contractual and state-law remedies.

26. The Property is located in Texas and issues concerning foreclosure, title, lien enforcement, possession, and disposition of collateral are governed by Texas law.

27. Accordingly, cause exists to grant relief from stay pursuant to 11 U.S.C. § 362(d)(1).

**RELIEF IS WARRANTED UNDER § 362(d)(2)**

28. Relief is independently warranted pursuant to 11 U.S.C. § 362(d)(2).

29. This section provides that the Court shall grant relief from the stay "if (A) the debtor does not have equity in such property, and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2); *see also Matter of Orchard Hills Baptist Church, Inc.*, 608 B.R. 309, 321 (Bankr. N.D. Ga. 2019).

30. "Once a movant under this section establishes that the debtor has no equity in the collateral, it is the burden of the debtor to establish that it is necessary to an effective reorganization." *Id.* (citing to 11 U.S.C. § 362(g)).

31. A debtor "does not have an equity" in the property when "the creditor is undersecured" by the value of the property. *Lee v. U.S. Bank Nat'l Ass'n*, 102 F.4th 1177, 1180 (11th Cir. 2024) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs*., 484 U.S. 365, 375 (1988).

32. And "property is not necessary to an effective reorganization" unless it is "essential for an effective reorganization" and the reorganization is "in prospect"—in other words, there must be "a reasonable possibility of a successful reorganization within a reasonable time." *Id.*

33. The total indebtedness owing to Movant exceeds $1,967,562.83.

34. Dallas County tax records reflect an assessed market value of approximately $1,000,000 for the Property. A true and correct copy of the aforementioned tax assessor records is attached hereto as **Exhibit "C"** and incorporated herein by reference.

35. The indebtedness exceeds the apparent value of the Property by approximately $967,562.83, exclusive of continuing accruals.

36. Accordingly, the Debtor lacks equity in the Property.

37. This proceeding is an involuntary Chapter 7 liquidation case.

38. No plan of reorganization is possible.

39. Accordingly, the Property cannot be necessary to an effective reorganization as a matter of law.

40. Relief from stay is therefore required pursuant to § 362(d)(2).

**WHEREFORE**

Movant respectfully requests that this Court enter an Order:

1. Granting relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2);

2. Authorizing Movant to commence, continue, and conclude foreclosure proceedings concerning the Property located at 1035 Lighthouse Court, Grand Prairie, Texas 75104;

3. Authorizing Movant to exercise all rights and remedies available under the Note, Deed of Trust, Security Agreement, Assignment of Leases and Rents, and applicable Texas law;

4. Waiving any stay otherwise applicable under Bankruptcy Rule 4001(a)(3); and

5. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

BUCHALTER LLP

/s/ Brian S. Goldberg
Brian S. Goldberg
Georgia Bar No. 128007
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Attorney for BD Capital SE LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of October, 2026, I electronically filed the foregoing Notice of Hearing and Creditor BD Capital SE LLC 's Motion for Relief from the Automatic Stay, together with all exhibits attached thereto, using the Bankruptcy Court's CM/ECF system, which automatically sends notice of such filing to all parties registered to receive electronic notice in this case. I further certify that on this same date I caused a true and correct copy of the foregoing Notice of Hearing, Creditor BD Capital SE LLC s Motion for Relief from the Automatic Stay, and all exhibits thereto to be served by United States Mail, First Class, with adequate postage prepaid, addressed as follows:

JDS-Q Services, LLC
1035 Lighthouse Court
Grand Prairie, Texas 75104

Derek Jones
110 Walter Way
Stockbridge, Georgia 30281

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

This 8th day of October, 2026.

Respectfully submitted,

BUCHALTER LLP

/s/ Brian S. Goldberg

Brian S. Goldberg
Georgia Bar No. 128007
3475 Piedmont Road, Suite 1100
Atlanta, Georgia 30305
Telephone: (404) 832-7667
Email: bgoldberg@buchalter.com
Attorney for BD Capital SE LLC

**Exhibit "A"**

**JDS-Q SERVICES, LLC**
**$1,660,528.00**
**November 25, 2024**

# COMMERCIAL PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, **JDS-Q SERVICES, LLC**, a Texas limited liability company with an address of **7750 N MacArthur Boulevard, Suite 120-106, Irving, TX 75063** ("Maker"), promises to pay to the order of **BD CAPITAL SE LLC,** a New Jersey limited liability company having an address at **67 Mountain Boulevard, Suite 201, Warren, NJ 07059** ("Lender"), or at such other place as the holder hereof may designate, the principal amount of **One Million Six Hundred Sixty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,660,528.00),** with interest on the principal amount of this Note outstanding computed from the date hereof, together with all taxes assessed upon this Note and together with any costs, expenses, and reasonable attorneys' fees incurred in the collection of this Note or in protecting, maintaining, or enforcing its security interest or any Deed of Trust securing this Note or upon any litigation or controversy affecting this Note or the security given therefor, including, without limitation, proceedings under the Federal Bankruptcy Code.

1. **Payments.** Principal and interest hereunder shall be payable as follows:

**A.** From the date hereof, interest on the principal amount of this Note outstanding shall accrue at the rate of 11.75% per annum, for the period from the date hereof to and including November 30, 2024 shall be payable at the closing of the loan.

**B.** The rate of interest of this Note, which shall remain effective until an Event of Default (as defined below), shall be fixed at 11.75% per annum. Interest on this Note shall be calculated on the basis of a 30-day month and a 360-day year.

**C.** Beginning on **January 01, 2025** and continuing on the **1st day** of each and every month thereafter through and including the payment due on **June 01, 2026** (as hereinafter defined), Maker shall make payments of interest only, in arrears, on the principal amount of this Note outstanding.

**D.** If not sooner paid, the entire principal amount of this Note, together with accrued interest and with all other sums due hereunder, shall be due and payable in full on **June 01, 2026** (the "Maturity Date"). It is understood and agreed by Maker that if sufficient prepayments of principal have not been made, a balloon payment will be due on the Maturity Date.

**E.** All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate hereinafter set forth, with the balance on account of principal.

**F.** At no time shall the interest rate exceed the maximum rate permitted by the usury statutes governing this Note, if any. If, by application of the above interest rate formula, the interest rate would exceed and violate such usury statutes, interest shall accrue at the maximum rate permitted by law.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**G.** The sum of **Sixteen Thousand Six Hundred Five and 28/100 dollars ($16,605.28)** shall be due and payable from Borrower to Lender on **December 01, 2025** (the "Deferred Origination Fee") in consideration of Lender's commitment to make the Loan on the terms and conditions stated herein. In no event shall the Fee be applied or credited in reduction of any principal, interest, or other sum payable hereunder.

**2. Security.** This Note is secured by a first priority Commercial Deed of Trust, Security Agreement, and Fixture Filing (the "Deed of Trust") on that certain piece or parcel of real property known as **1035 Lighthouse Court, Grand Prairie, TX 75104** being more specifically described in said Deed of Trust.

**3. Default.** If any of the following events occur (which is an "Event of Default"), Lender may declare the entire outstanding principal balance hereof, together with any other amounts that Maker owes to Lender, to be immediately due and payable:

**a.** Maker fails to pay any installment of principal and/or interest or any other charges due under this Note within fifteen (15) days after the same becomes due and payable;

**b.** Maker defaults in any other obligations, liabilities, or indebtedness with Lender (whether now existing or hereafter arising);

**c.** Maker sells, leases, or otherwise disposes of all or substantially all of its property, assets, or business, or if Maker ceases any of its business operations, dissolves, or commences reorganization;

**d.** Makers makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

**e.** Makers files or becomes the subject of a petition in Bankruptcy or upon the commencement of any proceeding or action under any Bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Maker, provided, however, that Maker shall have sixty (60) days from the filing of any involuntary petition in Bankruptcy to have the same discharged and dismissed;

**f.** Upon the failure by Maker to observe or perform, or upon default in, any covenants, agreements, or provisions in the Deed of Trust, Loan Agreement or in any other instrument, document, or agreement, executed and/or delivered in connection herewith or therewith;

**g.** Any representation or statement made herein or any other representation or statement made or furnished to Lender by Maker was materially incorrect or misleading at the time it was made or furnished;

**h.** In the event of any material adverse change in the financial condition of Maker or any guarantor of the loan; or

**i.** Upon the death of any guarantor of the loan.

**4. Default Rate.** After the occurrence of an Event of Default, interest will accrue at the lesser of **(i)** 19% per annum or **(ii)** the Maximum Rate (as defined in Section 14 below) allowed by applicable law. Interest will continue to accrue at the default rate after judgment until the Note is paid in full.

**5. Prepayment.** Provided that Maker is not in default hereunder, Maker may prepay all or any portion of the unpaid principal balance of this Note at any time. All prepayment shall be applied first to any costs or charges

due hereunder, then to interest due and owing hereunder, and then to principal then outstanding, in inverse order of maturity.

**6. Late Charge.** It is further agreed that the holder hereof may collect a late charge equal to ten percent (10%) of any payment required hereunder, including the final payment, or required under any security agreement, Deed of Trust, or any other instrument, document, or agreement executed and/or delivered in connection herewith which is not paid within ten (10) days of the due date thereof. This late charge is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorneys' fees incurred in any action to collect this Note or to foreclose the Deed of Trust securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

**7. Lien/Set Off.** Maker hereby gives the holder hereof a lien and right of set off for all of Maker's liabilities to the holder hereof or Lender upon and against all deposits, credits, and other property of Maker now or hereafter in the possession or control of the holder hereof, or in transit to it, excepting however, funds held in trust by Maker. All payments shall be made in lawful currency of the United States of America in immediately available funds, without abatement, counterclaim, or set-off, and free and clear of, and without any deduction or withholding for, any taxes or other matters.

**8. Purpose of Loan.** Maker represents and warrants that the proceeds of this Note are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Maker acknowledges that Lender is making this loan to Maker in reliance upon the above representation by Maker. The above representation by Maker will survive the closing of this loan and repayment of amounts due to Lender hereunder.

**9. Other Obligations.** To the extent that the outstanding balance of this Note is reduced or paid in full by reason of any payment to Lender by an accommodation maker, endorser, or guarantor, and all or any part of such payment is rescinded, avoided, or recovered from Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy, or reorganization of the accommodation maker, endorser, or guarantor, the amount of such rescinded, avoided, or returned payment shall be added to or, in the event this Note has been previously paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the outstanding balance of this Note and all terms and provisions herein shall thereafter apply to the same.

**10. WAIVER. MAKER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES THE RIGHT TO NOTICE AND HEARING UNDER NEW JERSEY GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, AND FURTHER WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THIS NOTE, AND ALL RIGHTS UNDER ANY STATUTE OF LIMITATIONS, AND AGREES THAT THE TIME FOR PAYMENT OF THIS NOTE MAY BE CHANGED AND EXTENDED AS PROVIDED IN SAID DEED OF TRUST OR ANY SECURITY AGREEMENT, WITHOUT IMPAIRING MAKER'S LIABILITY THEREON, AND FURTHER CONSENTS TO THE RELEASE OF ALL OR ANY PART OF THE SECURITY FOR THE PAYMENT HEREOF, OR THE RELEASE OF ANY PARTY LIABLE FOR THIS OBLIGATION WITHOUT AFFECTING THE LIABILITY OF THE OTHER PARTIES HERETO. ANY DELAY ON THE PART OF THE HOLDER HEREOF IN EXERCISING ANY RIGHT HEREUNDER SHALL NOT OPERATE AS A WAIVER OF ANY SUCH RIGHT, AND ANY WAIVER GRANTED FOR ONE OCCASION SHALL NOT OPERATE AS A WAIVER IN THE EVENT OF ANY SUBSEQUENT DEFAULT. MAKER FURTHER WAIVES TRIAL BY JURY AND ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY,**

**VOLUNTARILY, AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THE WAIVER BY ITS ATTORNEY.**

**11. Binding Effect.** This Note shall be binding on Maker, its successors and assigns and shall inure to the benefit of Lender, any holder hereof, its successors and assigns.

**12. Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without reference to conflicts of laws principles thereof.

**13. Joint and Several.** Should this Note be signed by more than one Maker, references in this Note to Maker in the singular shall include the plural and all obligations herein contained shall be joint and several of each signer hereof.

**14. Maximum Rate.** Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Maker under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Maker stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Maker and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Maker.

**15. Rights Cumulative.** The rights and remedies of Lender shall be cumulative and not in the alternative, and shall include all rights and remedies granted herein, in any document referred to herein or executed and/or delivered in connection herewith, and under all applicable laws, and the exercise of any one or more of them will not be a waiver of any other.

**16. Severability.** If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the remainder shall not affected thereby and each such term, clause, or provision shall be valid and enforceable to the fullest extent permitted by law.

**17. Counterparts.** This instrument may be executed in any number of counterparts each of which shall be considered an original.

**18. Maturity Date Extension.** Upon Borrower's request, Lender may, in its sole and absolute discretion, extend the Maturity Date for six (6) months (the "Extended Term"). Lender shall provide written notice to Borrower of such determination, and provided that Lender does not receive payment in full of the principal balance of the Note and all accrued interest and all other sums due under the Note, Mortgage and other Loan Documents on or before the original Maturity Date, the Loan shall be deemed extended by the Extended Term.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

In consideration of the Extended Term, if authorized by Lender, the Borrower agrees to pay to Lender an extension fee equal to one percent (1.00%) of the total Loan amount at the time the Loan is extended, or an extension fee equal to two percent (2.00%) if payment of the fee is deferred to the exit of the Loan, either by Maturity, Acceleration of Maturity, Payoff, or otherwise. Furthermore, upon granting of the extension, the Interest Rate (as set forth in the Note) shall be modified to the greater of (1) the 30-day Average Secured Overnight Financing Rate ("SOFR") index at the time of the extension, as most recently published by the Federal Reserve Bank of New York plus 800 basis points or (2) 50 basis points above the original Interest Rate (the "Floor Rate"). The extension is only effective once the Lender receives the extension fee and the interest rate is adjusted in accordance with this Section.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**IN WITNESS WHEREOF**, the undersigned have executed this Commercial Promissory Note on November 25, 2024.

**MAKER**
**JDS-Q SERVICES, LLC**

By: ______________________
Name: LaQuonda Brewer
Title: Sole Member

**Exhibit “B”**

**After Recording Return to:**

**JDS-Q SERVICES, LLC**
**$1,660,528.00**
**November 25, 2024**

BD Capital SE LLC
67 Mountain Boulevard, Suite 201, Warren, NJ 07059

**COMMERCIAL DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS**

KNOW ALL MEN BY THESE PRESENTS that **JDS-Q SERVICES, LLC,** a Texas limited liability company having an office at **7750 N MacArthur Boulevard, Suite 120-106, Irving, TX 75063** ("Trustor" or "Borrower", as the case maybe), in consideration of the debt and trust hereinafter mentioned does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN, and CONVEY and WARRANT in trust unto Michael J. Schroeder, Esq., ("Trustee"), the following described property (all of which is sometimes referred to collectively herein as the "Property") for the benefit of **BD CAPITAL SE LLC,** a New Jersey limited liability company having an address at **67 Mountain Boulevard, Suite 201, Warren, NJ 07059** ("Beneficiary" or "Lender", as the case maybe):

**(A)** All right, title and interest in and to those premises more commonly known as **1035 Lighthouse Court, Grand Prairie, TX 75104** which is more particularly described in **SCHEDULE A** (the "Premises") which is attached hereto and made a part hereof;

**(B)** TOGETHER WITH **(1)** all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Premises, and **(2)** all building materials, supplies and other property stored at or delivered to the Premises or any other location for incorporation into the improvements located or to be located on the Premises, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by the Trustor and located in or on, or attached to, and used or intended to be used in connection with, or with the operation of, or the occupancy of, the Premises, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by the Trustor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and all of the right, title and interest of the Trustor in and to such personal property which, to the fullest extent permitted by law, shall be conclusively deemed fixtures and a part of the real property encumbered hereby (the "Improvements");

**(C)** TOGETHER WITH **(1)** all estate, right, title and interest of the Trustor, of whatever character, whether now owned or hereafter acquired, in and to **(a)** all streets, roads and public places, open or proposed, in front of or adjoining the Premises, and the land lying in the bed of such streets, roads and public places, and **(b)** all other sidewalks, alleys, ways, passages, strips and gores of land adjoining or used or intended to be used in connection with any of the property described in

**paragraphs (A) and (B)** hereof, or any part thereof; and **(2)** all water courses, water rights, easements, rights-of-way and rights of use or passage, public or private, and all estates, interest, benefits, powers, rights (including, without limitation, any and all lateral support, drainage, slope, sewer, water, air, mineral, oil, gas and subsurface rights), privileges, licenses, profits, rents, royalties, tenements, hereditaments, reversions and subreversions, remainders and subremainders and appurtenances whatsoever in any way belonging, relating or appertaining to any of the property described in **paragraphs (A) and (B)** hereof, or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Trustor; and

**(D)** TOGETHER WITH **(a)** all estate, right, title and interest of the Trustor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in **paragraphs (A), (B) and (C)** hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in **paragraphs (A), (B) or (C)** hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in **paragraphs (A), (B) or (C)** hereof, or any part thereof; and the Beneficiary is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefor, and (if it so elects) to apply the same, after deducting therefrom any expenses incurred by the Beneficiary in the collection and handling thereof, toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable; and **(b)** all contract rights, general intangibles, governmental permits, licenses and approvals, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums, arising from or relating to the property described in **paragraphs (A), (B) and (C)** above; and **(c)** all proceeds, products, replacements additions, substitutions, renewals and accessions of and to the property described in **paragraphs (A), (B)** and **(C)**.

TO HAVE AND TO HOLD the Property, unto Trustee and Trustee's successors, substitutes, or assigns, in trust and for the uses and purposes herein set forth, forever, together with all rights, privileges, hereditaments, and appurtenances in anywise appertaining or belonging thereto, subject only to the encumbrances set forth in **SCHEDULE B** which is attached hereto and made a part hereof, and Trustor, for Trustor and Trustor's successors, hereby agrees to warrant and forever defend, all and singular, the Property unto Trustee and Trustee's successors or substitutes in this trust against the claim or claims of all persons claiming or to claim the same or any part thereof, except as set forth in said **SCHEDULE B**.

**THE CONDITION OF THIS DEED OF TRUST IS SUCH THAT:**

WHEREAS, the Trustor is indebted to the Beneficiary by virtue of a commercial loan transaction (the "Loan") in the sum of **One Million Six Hundred Sixty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,660,528.00)** as evidenced by (1) a certain Commercial Promissory Note in the principal amount of **One Million Six Hundred Sixty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,660,528.00)** (as same may be amended, restated, or modified from time to time, the "Note") dated **November 25, 2024** executed by the Trustor and delivered to the Beneficiary, with all amounts remaining unpaid thereon being finally due and payable on **June 01, 2026** and (2) that certain Loan Agreement (as same may be amended, restated, or modified from time to time, "Loan Agreement") of even date herewith;

WHEREAS, the terms and repayment of such obligations of the Trustor are set forth in the Note;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, the Trustor is hereby executing this Deed of Trust in favor of the Beneficiary;

WHEREAS, Beneficiary has agreed to provide financing for the purchase and renovations of the premises located at: **1035 Lighthouse Court, Grand Prairie, TX 75104**; and

WHEREAS, Beneficiary has agreed to grant Trustor a deed of trust in the Premises as collateral for the refinancing of the premises located at: **1035 Lighthouse Court, Grand Prairie, TX 75104;** and

WHEREAS, at closing, the Beneficiary initially advanced the sum of **Three Hundred Forty Thousand and 00/100 dollars ($340,000.00)** to Trustor on the date hereof and may make further advances of an additional **One Million Three Hundred Twenty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,320,528.00)** for a total loan in the amount of **One Million Six Hundred Sixty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,660,528.00)**; and

WHEREAS, buildings and/or improvements on the Premises are in the process of construction or repair, or are to be constructed, erected or repaired; and

WHEREAS, Beneficiary has agreed to make the Loan to Trustor, the balance of which is to be paid to Trustor in installments, provided Trustor is not in default hereunder, the time and amount of each advancement to be at the sole discretion of Beneficiary, up to **One Million Six Hundred Sixty Thousand Five Hundred Twenty Eight and 00/100 dollars ($1,660,528.00)** and

WHEREAS, Trustor represents and warrants that it has full power and authority to execute and deliver the Note, this Deed of Trust, and all other documents, agreements and instruments required of it by Beneficiary in connection with the making of the Loan (the Note, this Deed of Trust, and all such other documents, agreements and instruments executed and delivered by Trustor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, Trustor hereby covenants and agrees with Beneficiary as follows:

**ARTICLE ONE: COVENANTS OF THE TRUSTOR**

**1.01 Performance of Loan Documents.** The Trustor shall cause to be performed, observed and complied with all provisions hereof, of the Note and each of the Loan Documents, and will promptly pay to the Beneficiary the principal, with interest thereon, and all other sums required to be paid by the Trustor under the Note and pursuant to the provisions of this Deed of Trust and of the Loan Documents when payment shall become due (the entire principal amount of the Note, all accrued interest thereon and all obligations and indebtedness thereunder and hereunder and under all of the Loan Documents described being referred to herein as the "Indebtedness").

**1.02 General Representations, Covenants and Warranties.** The Trustor represents and covenants that **(a)** the Trustor is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency case or proceeding is pending or contemplated by or against the Trustor; **(b)** all reports, statements and other data furnished by the Trustor to the Beneficiary in connection with the Loan are true, correct and complete in all material respects and do not omit to state any fact or

circumstance necessary to make the statements contained therein not misleading; **(c)** this Deed of Trust, the Note and all other Loan Documents are legal, valid and binding obligations of the Trustor enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contract or agreement to which the Trustor is a party or by which the Trustor may be bound and do not contravene any law, order, decree, rule or regulation to which the Trustor is subject; **(d)** there are no actions, suits or proceedings pending, or to the knowledge of the Trustor threatened, against or affecting the Trustor or any part of the Property; **(e)** all costs arising from construction of any improvements and the purchase of all equipment located on the Property which have been incurred prior to the date of this Deed of Trust have been paid; **(f)** the Property has frontage on, and direct access for, ingress and egress to the street(s) described in any survey submitted to the Beneficiary; **(g)** electric, sewer, water facilities and any other necessary utilities are, or will be, available in sufficient capacity to service the Property satisfactorily during the term of the Note, and any easements necessary to the furnishing of such utility service by the Trustor have been or will be obtained and duly recorded (evidence satisfactory to the Beneficiary that all utility services required for the use, occupancy and operations of the Property shall be provided to the Beneficiary immediately upon the Beneficiary's request); **(h)** there has not been, is not presently and will not in the future be any activity conducted by the Trustor or any tenant at or upon any part of the Property that has given or will give rise to the imposition of a lien on any part of the Property; **(i)** the Trustor is not in default under the terms of any instrument evidencing or securing any indebtedness of the Trustor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, or the passage of time or both; and **(j)** the Beneficiary has legal capacity to enter into the Loan and to execute and deliver the Loan Documents, and the Loan Documents have been duly and properly executed on behalf of the Beneficiary.

**1.03 Compliance with Laws; Permits; Notice.** The Trustor covenants and warrants that the Property presently complies with and shall continue to comply with all applicable restrictive covenants, applicable zoning, wetlands and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, statutes, rules, ordinances, codes, and regulations, and the Trustor has not received any notice that the Property is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations. If the Trustor receives notice from any federal, state or other governmental body that it is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations, the Trustor shall provide the Beneficiary with a copy of such notice promptly. The Trustor agrees to comply with all federal, state and municipal local laws, statutes, rules, ordinances, codes and regulations in connection with the construction and development of the Property. The Trustor has obtained all licenses, permits, authorizations, consents and approvals necessary for the construction and development of the Property, and all such licenses, permits, authorizations, consents and approvals are in full force and effect and all appeal periods have expired. Unless required by applicable law or unless the Beneficiary has otherwise agreed in writing, the Trustor shall not allow changes in the nature of the occupancy for which the Premises were intended at the time this Deed of Trust was executed. The Trustor shall not initiate or acquiesce in a change in the zoning classification of the Property without the Beneficiary's prior written consent. The Trustor warrants and represents that its use, and the use by any of its tenants, of the Property is in accordance and compliance with the terms and conditions of any and all rules, regulations, and laws that may be applicable to the Property, including, without limitation, all federal, state and local laws, ordinances, rules and regulations regarding hazardous and toxic materials and that the Trustor shall maintain and continue such compliance and shall require and ensure its tenants' compliance with the same. the Trustor shall maintain or shall cause their agent to maintain in its possession, available for the inspection of the Beneficiary, and shall deliver to the Beneficiary, upon three (3) business days' request, evidence of compliance with all such requirements. The Trustor hereby indemnifies and holds the

Beneficiary free of and harmless from and against any and all claims, demands, damages or liabilities that the Beneficiary may incur with regard thereto.

**1.04 Taxes and Other Charges.**

**1.04.1 Impositions.** Subject to the provisions of this **Section 1.04**, the Trustor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Land, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Property or any part thereof, or which shall become payable with respect thereto. The Trustor shall deliver to the Beneficiary, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true Photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to the Beneficiary.

**1.04.2 Insurance.**

**(a)** The Trustor shall keep all buildings erected on or to be erected on the Property insured against loss by fire and such other hazards as the Beneficiary may require and the Trustor shall obtain and maintain insurance with respect to other insurable risks and coverage relating to the Property including, without limitation, fire, builder's risk, worker's compensation, physical damages, loss of rentals or business interruption, earthquake (if applicable), and liability insurance, all such insurance to be in such sums and upon such terms and conditions as the Beneficiary reasonably may require, with loss proceeds by the terms of such policies made payable to the Beneficiary as its interest may appear. The Trustor covenants that all insurance premiums shall be paid not later than fifteen (15) days prior to the date on which such policy could be cancelled for non-payment. If, to the Trustor's knowledge, any portion of the Property is in an area identified by any federal governmental authority as having special flood hazards, and flood insurance is available, a flood insurance policy meeting the current guidelines of FEMA's Federal Insurance and Mitigation Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (1) the outstanding principal balance of the Loan, (2) the full insurable value of the Property, and (3) the maximum amount of insurance available under the Flood Disaster Protection Act of 1973, as amended. All such insurance policies (collectively, the "hazard insurance policy") shall contain a standard the Beneficiary clause naming the Beneficiary and its successors and assigns as beneficiary, and may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the Beneficiary.

**(b)** Such insurance companies shall be duly qualified as such under the laws of the states in which the Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and companies whose claims paying ability is rated in the two highest rating categories by A.M. Best with respect to hazard and flood insurance. Such insurance shall be in amounts not less than the greater of: **(i)** the outstanding principal balance of the Loan, or **(ii)** the amount necessary to avoid the operation of any co-insurance provisions with respect to the Premises.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**(c)** All such policies must provide for a minimum of thirty (30) days prior written cancellation notice to the Beneficiary. the Beneficiary, upon its request to the Trustor, will have custody of all such policies and all other policies which may be procured insuring said Property, the same to be delivered, to the Beneficiary at its office and all renewal policies to be delivered and premiums paid to the Beneficiary at its office at least twenty (20) days before the expiration of the old policies, and the Trustor agrees that upon failure to maintain the insurance as above stipulated or to deliver said renewal policies as aforesaid, or the pay the premiums therefor, the Beneficiary may, without obligation to do so, procure such insurance and pay the premiums therefor and all sums so expended shall immediately be paid by the Trustor and unless so paid, shall be deemed part of the debt secured hereby and shall bear interest at the rate set forth in the Note, and thereupon the entire principal sum unpaid, including such sums as have been paid for premiums of insurance as aforesaid, and any and all other sums which shall be payable hereunder shall become due and payable forthwith at the option of the Beneficiary, anything herein contained to the contrary notwithstanding. In case of loss and payment by any insurance company, the amount of insurance money received shall be applied either to the Indebtedness secured hereby, or in rebuilding and restoring the damaged property, as the Beneficiary may elect.

**(d)** The Trustor has not engaged in and shall not engage in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback, or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm, or other person, and no such unlawful items have been received, retained, or realized by the Trustor.

**(e)** No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage.

**1.04.3 Deposits for Impositions and Insurance.** Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by the Beneficiary, after failure by the Trustor to pay any of the amounts specified in **Subsections 1.04.1 or 1.04.2**, the Trustor shall deposit with the Beneficiary on the first day of each month an amount equal to one twelfth (1/12th) of the sum of: **(i)** the aggregate annual payments for the Impositions; **(ii)** the annual insurance premiums on the policies of insurance required to be obtained and kept in force by the Trustor under this Deed of Trust; and **(iii)** all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Property or any part thereof (**(i)**, **(ii)**, and **(iii)**, collectively, the "Annual Payments"). Such sums will not bear interest and are subject to adjustment or additional payments in order to assure the Beneficiary that it will have the full amount of any payment on hand at least one (1) month prior to its due date. the Beneficiary shall hold said sums in escrow to pay said Annual Payments in the manner and to the extent permitted by law when the same become due and payable. Notwithstanding anything herein to the contrary, however, such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of the Beneficiary. If the total payments made by the Trustor to the Beneficiary, on account of said Annual Payments up to the time when the same become due and payable, shall exceed the amount of payment for said Annual Payments actually made by the Beneficiary, such excess shall be credited by the Beneficiary against the next payment or payments due from the Trustor to the Beneficiary on account of said Annual Payments. If, however, said payments made by the Trustor shall not be sufficient to pay said

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

Annual Payments when the same become due and payable, the Trustor agrees to promptly pay to the Beneficiary the amount necessary to make up any deficiency. In case of default in the performance of any of the agreements or provisions contained in the Note, the Beneficiary may, at its option, at any time after such default, apply the balance remaining of the sums accumulated, as a credit against the principal or interest of the Deed of Trust Indebtedness, or both.

**1.04.4 Late Charge.** The Beneficiary may collect a "late charge" of ten percent (10%) on any payment or installment due or required to be paid pursuant to the terms of this Deed of Trust or the Note which is not paid within ten (10) days of when the same is required to be paid to cover the extra expenses involved in handling such delinquent payment.

**1.04.5 Proof of Payment.** Upon request of the Beneficiary, the Trustor shall deliver to the Beneficiary, within twenty (20) days after the due date of any payment required in this **Section 1.04**, proof of payment satisfactory to the Beneficiary.

**1.05 Condemnation.** The Beneficiary shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of, any damage or taking through condemnation, eminent domain or the like, and the Beneficiary is hereby authorized, at its option, to commence, appear in and prosecute in its own or the Trustor's name any action or proceeding relating to any such condemnation, taking or the like and to settle or compromise any claim in connection therewith.

**1.06 Care of Property; Demolition and Alteration**. The Trustor shall maintain the Property in good condition and repair, shall not commit or suffer any waste of the Property, and shall comply with or cause to be complied with, all statutes, laws, rules, ordinances and requirements of any governmental authority relating to the Property; and the Trustor shall promptly repair, restore, replace or rebuild any part of the Property now or hereafter subject to the lien of this Deed of Trust which may be damaged or destroyed by any casualty whatsoever or which may be affected by any proceeding of the character referred to **in Section 1.05**. The Trustor shall complete and pay for, within a reasonable time, any structure in the process of construction on the Property at any time during the term of the Loan; and the Trustor shall not initiate, join in, or consent to any change in any private restrictive covenants, or private restrictions, limiting or defining the uses which may be made of the Property or any part thereof, without the written consent of the Beneficiary. The Trustor agrees that no building or other property now or hereafter covered by the lien of this Deed of Trust shall be removed, demolished, or materially altered, without the prior written consent of the Beneficiary, except that the Trustor shall have the right, without such consent, to remove and dispose of, free from the lien of this Deed of Trust, such equipment as from time to time may become worn out or obsolete, provided that simultaneously with or prior to such removal any such equipment shall be replaced with other equipment of value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement the Trustor shall be deemed to have subjected such equipment to the lien of this Deed of Trust.

**1.07 Transfer and Encumbrance of Property.**

**(a)** The Trustor shall not sell, convey, transfer, suffer any type of change in title or ownership, lease, assign or further encumber any interest in any part of the Property, without the prior written consent of the Beneficiary, Any such sale, conveyance, transfer, pledge, lease, assignment or encumbrance made without the Beneficiary's prior written consent shall be null and void and shall constitute a default hereunder. the Trustor shall not, without the prior written consent of the Beneficiary, permit any further assignment of the

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

rents, royalties, issues, revenues, income, profits or other benefits from the Property, or any part thereof, and any such assignment without the prior written consent of the Beneficiary shall be null and void and shall constitute a default hereunder. the Trustor agrees that in the event the ownership of the Property or any part thereof is permitted by the Beneficiary to be vested in a person other than the Trustor, the Beneficiary may, without notice to the Trustor, deal in any way with such successor or successors in interest with reference to this Deed of Trust and the Note and other sums hereby secured without in any way vitiating or discharging the Trustor's liability hereunder or upon the Note and other sums hereby secured. No sale of the Property and no forbearance to any person with respect to this Deed of Trust and no extension to any person of the time for payment of the Note and other sums hereby secured given by the Beneficiary shall operate to release, discharge, modify, change or affect the original liability of the Trustor either in whole or in part.

**(b)** If the Trustor shall sell, convey, assign or transfer all or any part of the Property or any interest therein or any beneficial interest in the Trustor without the Beneficiary's prior written consent, the Beneficiary may, at the Beneficiary's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by the Trustor and all other parties obligated in any manner on the Indebtedness, declare the Indebtedness to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment, lease or transfer, and upon such declaration the entire unpaid balance of the Indebtedness shall be immediately due and payable.

**(c)** The Trustor shall keep the Property free from mechanics' liens, materialmen's liens and encumbrances. If any prohibited lien or encumbrance is filed against the Property, the Trustor shall cause the same to be removed and discharged of record within thirty (30) days after the date of filing thereof.

**(d)** The Trustor shall obtain, upon request by the Beneficiary, from all persons hereafter having or acquiring any interest in or encumbrance on the Property or the said equipment or accessions, a writing duly acknowledged, and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Deed of Trust and no offsets or defenses exist in favor thereof against this Deed of Trust or the Note hereby secured, and deliver such writing to the Beneficiary.

**1.08 Further Assurances.** At any time and from time to time upon the Beneficiary's request, the Trustor shall make, execute and deliver, or cause to be made, executed and delivered, to the Beneficiary and, where appropriate, shall cause to be recorded or filed, and from time to time thereafter to be re-recorded and refiled, at such time and in such offices and places as shall be deemed desirable by the Beneficiary, any and all such further Deed of Trusts, instruments of further assurance, certificates and such other documents as the Beneficiary may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve, the obligations of the Trustor under the Note and this Deed of Trust, the lien of this Deed of Trust as a lien upon all of the Property, and unto all and every person or persons deriving any estate, right, title or interest under this Deed of Trust. Upon any failure by the Trustor to do so, the Beneficiary may make, execute, record, file, re-record or refile any and all such Deed of Trusts, instruments, certificates and documents for and in the name of the Trustor, and the Trustor hereby irrevocably appoints the Beneficiary the agent and attorney-in-fact of the Trustor to do so.

**1.09 Uniform Commercial Code Security Agreement and Fixture Filing**. This Deed of Trust is intended to be a security agreement and fixture filing which is to be filed for record in the real estate records pursuant to the Uniform Commercial Code in effect from time to time in the State of Texas for any of the goods specified above in this Deed of Trust as part of the Property which, under applicable law, may be subject to

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

a security interest pursuant to the Uniform Commercial Code and the Trustor hereby agrees to execute and deliver any additional financing statements covering said goods from time to time and in such form as the Beneficiary may require to perfect a security interest with respect to said goods. The Trustor shall pay all costs of filing such financing statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements which the Beneficiary may reasonably require. Without the prior written consent of the Beneficiary, the Trustor shall not create or suffer to be created, pursuant to the Uniform Commercial Code, any other security interest in said goods, including replacements and additions thereto. Upon the Trustor's breach of any covenant or agreement of the Trustor contained in this Deed of Trust, including the covenants to pay when due all sums secured by this Deed of Trust, the Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code and, at the Beneficiary's option, may also invoke the remedies permitted by applicable law as to such goods.

AS IT IS RELATED HERETO:

DEBTOR IS: JDS-Q SERVICES, LLC
7750 N MacArthur Boulevard, Suite 120-106, Irving, TX 75063

SECURED PARTY IS: BD Capital SE LLC
67 Mountain Boulevard, Suite 201, Warren, NJ 07059

The Trustor represents, covenants, and warrants that as of the date hereof as follows: the Trustor's full, correct, and exact legal name is set forth immediately above in this **Section 1.09**. The Trustor is an organization of the type and is incorporated in, organized, or formed under the laws of the state specified in the introductory paragraph to this Deed of Trust. In the event of any change in name or identity of the Trustor, the Trustor hereby authorizes the Beneficiary to file such Uniform Commercial Code forms as are necessary to maintain the priority of the Beneficiary's lien upon the Property which may be deemed personal property or fixtures, including future replacement thereof, which serves as collateral under this Deed of Trust.

**1.10 Lease Covenants.** Each and every covenant on the part of the Trustor contained in any assignment of lessor's interest in leases or any assignment of rents, royalties, issues, revenues, profits, income or other benefits made collateral hereto is made an obligation of the Trustor hereunder as if fully set forth herein.

**1.11 Assignment of Rents.** Trustor hereby absolutely and unconditionally assigns to Beneficiary all of Trustor's right, title and interest in and to each Lease whether now existing or hereafter entered into, together with the room revenues, occupancy charges, issues and profits ("Rents") of each such Lease as further security for the payment and performance of the Obligations, and Trustor grants to Beneficiary the right to enter the Premises for the purpose of collecting the same and to let the Premises, or any part thereof, and to apply said Rents after payment of all necessary charges and expenses, on account of the Obligations. This assignment and grant shall continue in effect until the Obligations are fully paid and performed. Beneficiary hereby waives the right to enter the Premises for the purpose of collecting Rents, and Trustor shall be entitled to collect, receive and use said Rents until the occurrence of a Default under this Deed of Trust. Trustor shall, from time to time after request by Beneficiary , execute, acknowledge and deliver to Beneficiary, in form satisfactory to Beneficiary , separate assignments confirming the foregoing assignment. Beneficiary shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Trustor under any Lease or other agreement affecting all or any part of the Premises, and Trustor hereby agrees to indemnify Beneficiary for and save it harmless from, any and all

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

liability arising from any such Lease or other agreement or any assignments thereof, and no assignment of any such Lease or other agreement shall place the responsibility for the control, care, management or repair of all or any part of the Premises upon Beneficiary , nor make Beneficiary liable for any negligence in the management, operation, upkeep, repair or control of all or any part of the Premises resulting in injury, death or property damage. Beneficiary or the receiver shall be liable to account only for rents and profits actually received by Beneficiary or the receiver as the case may be.

**1.12 After-Acquired Property.** To the extent permitted by and subject to applicable law, the lien of this Deed of Trust will automatically attach, without further act, to all after-acquired property located in, on, or attached to, or used, or intended to be used, in connection with, or with the renovation of, the Property or any part thereof; provided, however, that, upon request of the Beneficiary, the Trustor shall execute and deliver such instrument or instruments as shall reasonably be requested by the Beneficiary to confirm such lien, and the Trustor hereby appoints the Beneficiary its attorney-in-fact to execute all such instruments, which power is coupled with an interest and is irrevocable.

**1.13 Expenses.** Unless otherwise agreed in writing, the Trustor will pay when due and payable all appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title policy fees, escrow fees, attorneys' fees, court costs, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character which have been incurred or which may hereafter be incurred by the Beneficiary in connection with: **(a)** the preparation and execution of the Loan Documents; **(b)** the funding of the Loan; **(c)** in the event an Event of Default occurs hereunder or under the Note or any of the Loan Documents, all costs, fees and expenses, including, without limitation, all reasonable attorneys' fees in connection with the enforcement under the Note or foreclosure under this Deed of Trust, preparation for enforcement of this Deed of Trust or any other Loan Documents, whether or not suit or other action is actually commenced or undertaken; **(d)** enforcement of this Deed of Trust or any other Loan Documents; **(e)** court or administrative proceedings of any kind to which the Beneficiary may be a party, either as plaintiff or defendant, by reason of the Note, the Deed of Trust or any other Loan Documents; **(f)** preparation for and actions taken in connection with the Beneficiary's taking possession of the Property; **(g)** negotiations with the Trustor, its beneficiary, or any of its agents in connection with the existence or cure of any Event of Default or default; **(h)** any proposed refinancing by the Trustor or any other person or entity of the debt secured hereby; **(i)** the transfer of the Property in lieu of foreclosure; **(j)** inspection of the Property pursuant to **Section 1.15**; and **(k)** the approval by the Beneficiary of actions taken or proposed to be taken by the Trustor, its beneficiary, or other person or entity which approval is required by the terms of this Deed of Trust or any other of the Loan Document. The Trustor will, upon demand by the Beneficiary, reimburse the Beneficiary or any takeout lender for all such expenses which have been incurred or which shall be incurred by either of them; and will indemnify and hold harmless the Beneficiary from and against, and reimburse it for, the same and for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including, without limitation, attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by it by reason of, on account of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Property, or with this Deed of Trust or the Indebtedness.

**1.14 The Beneficiary's Performance of Defaults.** If the Trustor defaults in the payment of any tax, Assessment, encumbrance or other Imposition, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition, agreement or term in this Deed of Trust, the Note or in any of the Loan Documents, the Beneficiary may, without obligation to do so, to preserve its interest in the Property, perform or observe the same, and all payments made (whether such payments are

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

regular or accelerated payments) and costs and expenses incurred or paid by the Beneficiary in connection therewith shall become due and payable immediately. The amounts so incurred or paid by the Beneficiary, together with interest thereon at the default rate, as provided in the Note, from the date incurred until paid by the Trustor, shall be added to the Indebtedness and secured by the lien of this Deed of Trust to the extent permitted by law. The Beneficiary is hereby empowered to enter and to authorize others to enter upon the Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition, agreement or term, without thereby becoming liable to the Trustor or any person in possession holding under the Trustor.

**1.15 Financial Statements, Books, and Records.** The Trustor will furnish to the Beneficiary, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Property, the portion or portions of the Property occupied by each such tenant and occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

**1.16 Inspection.** The Beneficiary, and any persons authorized by the Beneficiary, shall have the right, at the Beneficiary's option, to enter and inspect the Premises during the fourth (4th) month and at all other reasonable times during the term of the Loan. The Trustor shall pay any professional fees and expenses, which may be incurred by the Beneficiary in connection with such inspection.

**1.17 Loan to Value Covenant.** If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Property, is greater than eighty percent (80%) of the value of the Property, as determined by the Beneficiary based upon the Beneficiary's review of any appraisal and such other factors as the Beneficiary may deem appropriate, then the Trustor shall within thirty (30) days following a request by the Beneficiary, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than eighty percent (80%) of the value of the Property. The inability of the Trustor to reduce the principal balance of the Note within thirty (30) days following request by the Beneficiary shall be, at the Beneficiary's option, an Event of Default, hereunder.

## ARTICLE TWO: DEFAULTS

**2.01 Event of Default.** The term "Event of Default" or "default" wherever used in this Deed of Trust, shall mean anyone or more of the following events: **(a)** failure by the Trustor to pay any installment of principal and/or interest under the Note within fifteen (15) days after the same becomes due and payable; **(b)** failure by the Trustor to observe or perform, or upon any default in, any other covenants, agreements or provisions herein, in the Note, or in any of the Loan Documents; **(c)** failure by the Trustor to pay any Imposition, Assessment, other utility charges on or lien against the Property; **(d)** failure by the Trustor to keep in force the insurance required in this Deed of Trust; **(e)** failure by the Trustor to either deliver the policies of insurance described in this Deed of Trust or to pay the premiums for such insurance as provided herein; **(f)** failure by the Trustor to pay any installment, which may not then be due or delinquent, of any Assessment for local improvements for which an official bill has been issued by the appropriate authorities and which may now or hereafter affect the Property, and may be or become payable in installments; **(g)** the actual or threatened waste, removal or demolition of, or material alteration to, any part of the Property, except as permitted herein; **(h)** the vesting of title, or any sale, conveyance, transfer, leasing, assignment or further

encumbrance in any manner whatsoever of any interest in the Property, or any part thereof, in or to anyone other than the present owner, or any change in title or ownership of the Property, or any part thereof, without the prior written consent of the Beneficiary; **(i)** all or a material portion of the Property being taken through condemnation, eminent domain, or any other taking such that the Beneficiary has reason to believe that the remaining portion of the Property is insufficient to satisfy the outstanding balance of the Note, or the value of the Property being impaired by condemnation, eminent domain or any other taking, (which term when used herein shall include, but not be limited to, any damage or taking by any governmental authority or any other authority authorized by the laws of any state or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently; **(j)** the merger or dissolution of the Trustor or the death of any guarantor of the Note ("Guarantor"); **(k)** any representation or warranty of the Trustor or any Guarantor made herein or in any such guaranty or in any certificate, report, financial statement, or other instrument furnished in connection with the making of the Note, the Deed of Trust, or any such guaranty, shall prove false or misleading in any material respect; **(l)** Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets; **(m)** the Trustor files, or becomes the subject of, a petition in bankruptcy, or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting the Trustor, provided however, that the Trustor shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed; **(n)** the Property becomes subject to **(1)** any tax lien which is superior to the lien of the Deed of Trust, other than a lien for local real estate taxes and assessments not due and payable or **(2)** any mechanic's, materialman's, or other lien which is, or is asserted to be, superior to the lien of the Deed of Trust and such lien shall remain undischarged for thirty (30) days, **(o)** the Trustor fails to promptly cure any violations of laws or ordinances affecting or which may be interpreted to affect the Property; **(p)** in the event of any material adverse change in the financial condition of the Trustor; or **(q)** any of the aforementioned events occur with respect to any Guarantor.

## ARTICLE THREE: REMEDIES

In the event that an Event of Default or default shall have occurred, the remedies available to the Beneficiary include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to the Beneficiary shall include, but not be limited to, any one or more of the following:

**3.01 Acceleration of Maturity.** If an Event of Default shall have occurred, the Beneficiary may, at its option, declare without demand or notice all of the outstanding Indebtedness to be due and payable immediately, and upon such declaration such Indebtedness shall immediately become and be due and payable without demand or notice.

**3.02 The Beneficiary's Right to Enter and Take Possession.** If an Event of Default shall have occurred, the Trustor, upon demand on the Beneficiary, shall forthwith surrender to the Beneficiary the actual possession of the Property and the Beneficiary itself, or by such officers or agents as it may appoint, may enter and take possession of the Property, collect and receive the rents and income therefrom, and to apply so much of said rents and income as may be required in the necessary expenses of running said Premises, including reasonable attorneys' fees, management agents' fees, and if the Beneficiary manages the Premises with its own employees, an amount equal to the customary management agents' fees charged for similar property in the area where the Premises are located, and to apply the balance of said rents and income to the payment of the amounts due upon said Note, or in payment of taxes assessed

against the Premises, or both. And for this purpose, and in case of such default, the Trustor hereby assigns, transfers, and sets over to the Beneficiary the rents and income accruing from said Premises. Nothing contained in the foregoing provisions shall impair or affect any right or remedy which the Beneficiary might now or hereafter have, were it not for such provisions, but the rights herein given shall be in addition to any others which the Beneficiary may have hereunder.

**3.03 Receiver.** If an Event of Default shall have occurred, the Beneficiary, to the extent permitted by law and without regard to the value or occupancy of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Property as security for the amounts due the Beneficiary, or the solvency of any person or limited liability company liable for the payment of such amounts.

**3.04 Trustee's Sale.** If any Event of Default occurs, Beneficiary is authorized and empowered, without further notice, to execute or cause the Trustee to execute a written notice of default and of election to cause the Property to be sold as required by law or as otherwise provided herein, and the Trustee shall file such notice for record in each county wherein the Property or any part thereof is situated. After such filing, the Trustee may lawfully foreclose and shall foreclose the lien of this Deed of Trust, and sell and dispose of the Property in masse or in separate parcels (as Beneficiary may elect) and all the right, title, and interest of Trustor therein, at a public auction at any place then authorized by law as may be specified in the notice of such sale, for the price permitted by law (the "Trustee's Sale"), legally required public notice having previously been given of the time and place of such sale. The Trustee, without demand on Trustor, shall sell the Property on the date and at the time and place designated in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which such Property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purchase price payable in lawful money of the United States at the time of sale. The person conducting the sale may, for any cause he deems expedient in accordance with applicable law, postpone the sale from time to time until it shall be completed and, in every case, notice of postponement shall be given as required by law. Trustee shall execute and deliver to the purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Beneficiary, may bid at the sale. Trustee shall apply the proceeds of the sale to payment of **(1)** the costs and expenses of exercising the power of sale and of the sale, including the payment of the Trustee's and attorneys' fees; **(2)** cost of any evidence of title procured in connection with such sale; **(3)** all sums expended under the terms hereof, not then repaid, with accrued interest as provided herein from date of expenditure; **(4)** all other sums then secured hereby; and **(5)** the remainder, if any, to the person or persons legally entitled thereto, or the Trustee, in its discretion, may deposit the balance of such proceeds with the County Clerk of the county in which the sale took place.

**3.05 Attorneys' Fees.** If this Deed of Trust is foreclosed by the Trustee, the Trustee shall allow a reasonable amount of attorneys' fees for services rendered in the supervision of such foreclosure proceedings as a part of the cost of foreclosure. If the foreclosure proceedings are made through court proceedings, attorneys' fees in an amount determined by the court to be reasonable shall be taxed by the court as a part of the cost of such foreclosure proceedings.

**3.06 Waiver of Appraisement, Valuation, Stay, Exemption, and Redemption Laws, etc.; Marshaling.** The Trustor agrees to the full extent permitted by law that after an Event of Default neither the Trustor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement,

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

valuation, stay, exemption, moratorium, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed of Trust, and the Trustor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, any and all right to have the assets comprising the Property marshaled upon any foreclosure hereof.

**3.07 Suits to Protect the Property.** The Beneficiary shall have the power and authority to institute and maintain any suits and proceedings as the Beneficiary may deem advisable in order to **(a)** prevent any impairment of the Property, **(b)** foreclose this Deed of Trust, **(c)** preserve and protect its interest in the Property, and **(d)** to restrain the enforcement of, or compliance with, any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to the Beneficiary's interest.

**3.08 Proofs of Claim.** In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case or proceeding affecting the Trustor, its creditors or its property, the Beneficiary, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness at the date of the institution of such case or proceeding, and for any additional amounts which may become due and payable by the Trustor after such date.

**3.09 Application of Monies by the Beneficiary.** After the occurrence of an Event of Default, any monies collected or received by the Beneficiary shall be applied in such priority as the Beneficiary may determine in its sole and absolute discretion, to such matters including, but not limited to, the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of the Beneficiary, to deposits for Impositions and Insurance and insurance premiums due, to the cost of insurance, Impositions, Assessments, and other charges and to the payment of the Indebtedness.

**3.10 No Waiver.** Notwithstanding any course of dealing or course of performance, neither failure nor delay on the part of the Beneficiary to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

**3.11 No Waiver of One Default to Affect Another.** No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If the Beneficiary **(a)** grants forbearance or an extension of time for the payment of any of the Indebtedness; **(b)** takes other or additional security for the payment thereof; **(c)** waives or does not exercise any right granted in the Note, this Deed of Trust or any other of the Loan Documents; **(d)** releases any part of the Property from the lien of this Deed of Trust or any other of the Loan Documents or releases or any party liable under the Note; **(e)** consents to the filing of any map, plat or replat of the Land; **(f)** consents to the granting of any easement on the Land; or **(g)** makes or consents to any agreement changing the terms of this Deed of Trust or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under this Deed of Trust or otherwise of the Trustor, or any subsequent purchaser of the Property or any part thereof or any maker, co-signer, endorser, surety or guarantor. No such act or omission shall preclude the Beneficiary from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by the Beneficiary, shall the lien of this Deed of Trust be altered thereby.

**3.12 Remedies Cumulative.** No right, power or remedy conferred upon or reserved to the Beneficiary by the Note, this Deed of Trust or any other of the Loan Documents is exclusive of any other right, power and remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other of the Loan Documents, or now or hereafter existing at law, in equity or by statute.

**3.13 Interest after Event of Default; Default Rate**. If an Event of Default shall have occurred, all sums outstanding and unpaid under the Note and this Deed of Trust shall, at the Beneficiary's option, bear interest at the default rate set forth in the Note.

**3.14 Indemnification of Trustee.** Except for gross negligence or willful misconduct, Trustee shall not be liable for any act or omission or error of judgment. Trustee may rely on any document believed by Trustee in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon. Trustor shall indemnify Trustee against all liability and expenses which Trustee may incur in the performance of Trustee's duties hereunder.

**3.15 Substitute Trustee.** Beneficiary may appoint a substitute Trustee **(a)** if Trustee herein named or any substitute Trustee shall die, resign, or fail, refuse or be unable, for any reason, to make any such sale or to perform any of the trusts herein declared; or **(b)** at the option of Beneficiary from time to time as often and whenever Beneficiary prefers and with or without any reason or cause. Each appointment shall be in writing, but without the necessity of recordation, notice to Trustor, or any other action or formality. Each substitute Trustee so appointed shall thereupon by such appointment become Trustee and succeed to all the estates, titles, rights, powers, trusts and duties of predecessor Trustee. Any such appointment may be executed by Beneficiary or any authorized representative of Beneficiary, and such appointment shall be presumed conclusively to have been executed with due and proper authority. Without limiting the generality of the foregoing, if Beneficiary is a corporation, bank or association, of any type or character, such appointment may be executed in its behalf by any officer of Beneficiary and shall be presumed conclusively to have been executed with due and proper authority without necessity of proof of any action by the board of directors or any superior officer. Wherever herein the word "Trustee" is used, the same shall mean the duly appointed trustee or substitute trustee hereunder at the time in question. Trustee may resign by written notice to Beneficiary.

**3.16 Provisional Remedies: Foreclosure And Injunctive Relief:** Nothing shall be deemed to apply to limit the right of Trustee to: (a) exercise self-help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Trustor or any other party in a third party proceeding in action bought against Beneficiary (including, but not limited to, actions in bankruptcy court). Beneficiary may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding.

## ARTICLE FOUR: MISCELLANEOUS PROVISIONS

**4.01 Heirs, Successors and Assigns Included in Parties.** Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

agreements contained in this Deed of Trust, by or on behalf of the Trustor or the Beneficiary shall bind and inure to the benefit of their respective heirs, successors and assigns, whether so expressed or not.

**4.02 Addresses for Notices, etc.**

**(a)** Any notice, report, demand or other instrument authorized or required to be given or furnished under this Deed of Trust shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, as follows:

**THE TRUSTOR:** JDS-Q SERVICES, LLC
7750 N MacArthur Boulevard, Suite 120-106, Irving, TX 75063

**Copy to:**

**THE BENEFICIARY:** BD Capital SE LLC
67 Mountain Boulevard, Suite 201, Warren, NJ 07059

**(b)** Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

**4.03 Headings.** The headings of the articles, sections, paragraphs and subdivisions of this Deed of Trust are for convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

**4.04 Provisions Subject to Applicable Laws; Severability** All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Deed of Trust invalid or unenforceable. In the event that any of the covenants, agreements, terms or provisions contained in the Note, or in this Deed of Trust or in any other Loan Documents shall be deemed invalid, illegal or unenforceable in any respect by a court with appropriate jurisdiction, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other Loan Documents shall be in no way affected, prejudiced or disturbed thereby.

**4.05 Modification.** This Deed of Trust, the Note, and all other Indebtedness are subject to modification. Neither this Deed of Trust, nor any term hereof, may be changed, waived, discharged or terminated orally or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge, or termination is sought.

**4.06 Governing Law. THIS DEED OF TRUST IS MADE BY THE BENEFICIARY AND ACCEPTED BY THE TRUSTOR IN THE STATE OF NEW JERSEY EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE WHERE THE PROPERTY IS LOCATED. TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE STATE WHERE THE PREMISES IS LOCATED, THE**

**LAW OF THE STATE OF NEW JERSEY SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (BUT THE FOREGOING SHALL NOT BE CONSTRUED TO LIMIT BENEFICIARY'S RIGHTS WITH RESPECT TO SUCH SECURITY INTEREST CREATED IN THE STATE WHERE THE PROPERTY IS LOCATED).**

**4.07 Prejudgment Remedies. THE TRUSTOR HEREBY REPRESENTS, COVENANTS, AND AGREES THAT THE PROCEEDS OF THE LOAN SECURED BY THIS DEED OF TRUST, AND EVIDENCED BY THE LOAN AGREEMENT, AND THE NOTE SHALL BE USED FOR GENERAL COMMERCIAL PURPOSES AND THAT SUCH LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF NEW JERSEY. THE TRUSTOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS INCLUDING, WITHOUT LIMITATION, NEW JERSEY GENERAL STATUTES, PERTAINING TO THE EXERCISE BY THE BENEFICIARY OF SUCH RIGHTS AS THE BENEFICIARY MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE THE TRUSTOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF THE TRUSTOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST THE TRUSTOR. THE TRUSTOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE BENEFICIARY TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY THE BENEFICIARY, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES, OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY THE BENEFICIARY. FURTHER, THE TRUSTOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.**

**4.08 Effects of Changes and Laws Regarding Taxation.** In the event of an enactment of any law deducting from the value of the Property any Deed of Trust lien thereon, or imposing upon the Beneficiary the payment of any or part of the Impositions, charges, or Assessments previously paid by the Trustor pursuant to this Deed of Trust, or change in the law relating to the taxation of Deed of Trusts, debts secured by Deed of Trusts or the Beneficiary's interest in the Property so as to impose new incidents of taxes on the Beneficiary, then the Trustor shall pay such Impositions or Assessments or shall reimburse the Beneficiary therefor; provided that, however, if in the opinion of counsel to the Beneficiary such payment cannot lawfully be made by the Trustor, then the Beneficiary may, at the Beneficiary's option, declare all of the sums secured by this Deed of Trust to be immediately due and payable without prior notice to the Trustor, and the Beneficiary may invoke any remedies permitted by applicable law.

**4.09 Purpose of Loan.** The Trustor represents and warrants that the proceeds from this Loan are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. The Trustor acknowledges that the Beneficiary has made this Loan to the Trustor in reliance upon the above representation. Said representation will survive the closing and repayment of the Loan. The Trustor acknowledges that the Federal and Texas Truth in Lending disclosures are not required for loans that are given solely for business and commercial purposes.

**4.10 Duplicate Originals.** This Deed of Trust may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**4.11 Usury Laws.** This Deed of Trust, the Note, and the other Loan Documents are subject to the express condition that at no time shall the Trustor be obligated or required to pay interest on the debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate permitted by applicable law. If, by the terms of this Deed of Trust, the Note, or any of the Loan Documents, the Trustor is at any time required or obligated to pay interest on the debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

**4.12 Construction.** This Deed of Trust and the Note shall be construed without regard to any presumption or other rule requiring construction against the party causing this Deed of Trust and the Note to be drafted.

**4.13 Release and Reconveyance.** If all of Trustor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents, no Default then exists hereunder and no Event of Default then exists under any other Loan Document, and if Trustor shall well and truly perform all of Trustor's covenants contained herein, then this conveyance shall become null and void and be released, and the Property shall be reconveyed to Trustor, at Trustor's request and expense.

**4.14 Entire Agreement.** This Deed of Trust, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Deed of Trust, Trustor acknowledges that it is not relying on any representation, warranty, covenant, promise, assurance, or other statement of any kind made by the Beneficiary or by any employee or agent of the Beneficiary.

**4.15 State Specific Provisions.**

1. Power of Sale. Any foreclosure against any real property constituting part of the Property under the power of sale granted under this Deed of Trust, including without limitation, pursuant to Section 3.04, shall be conducted in accordance with the following provisions:

(a) Public Sale.

(i) Trustee, or its successors or substitutes, is hereby authorized and empowered, and it shall be the Trustee's special duty, upon such request of Beneficiary, to sell or offer for sale the Property upon the occurrence of an Event of Default, in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of the same, to the highest bidder for cash at public auction in accordance with the requirements of Section 51.002 of the Texas Property Code, as it may be amended, supplemented, replaced or succeeded from time to time (the "Texas Property Code"). In instances where the Property is located in the State of Texas, such sale shall be made at the courthouse of the county in which the Property (or any portion thereof to be sold) is located, whether the parts or parcels thereof, if any, in different counties are contiguous or not, and without the necessity of having any personal property present at such sale. Each such sale shall be made in the area designated by the county commissioners for foreclosure sales (or, if no area has been designated, at the location at the courthouse designated by Beneficiary by or through Trustee in the written notice hereinafter described), on the first Tuesday of a month between the hours of 10:00 a.m. and 4:00 p.m. after advertising the time, place and terms of sale and that portion of the Property to be sold by posting or causing to be posted written or printed notice thereof at

least twenty-one (21) days before the date of the sale, both at the courthouse door of each county in which the Property is located and with the county clerk of each county in which the Property is located, which notice shall be posted at the courthouse door and filed with the county clerk by Trustee, or by any Person acting for him. The written notice shall include the earliest time at which the sale will be held and otherwise comply with the then applicable requirements of Section 51.002 of the Texas Property Code.

(ii) Beneficiary shall serve, or shall cause to be served, at least twenty-one (21) days before the date of sale written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to the records of Beneficiary by the deposit of such notice in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address as shown by the records of Beneficiary. If and to the extent that the Texas Property Code shall at any time or from time to time be amended to change the manner or procedure of sale as set forth above, then the provisions of this paragraph shall be deemed to be automatically amended to conform such provisions to the amended provisions of the Texas Property Code. The affidavit of a Person knowledgeable of the facts to the effect that service was completed is prima facie evidence thereof.

(b) Right to Require Proof of Financial Ability and/or Cash Bid. At any time during the bidding, Trustee may require a bidding party (A) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal the bidding party is representing (if applicable), and (B) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party, as a condition to the bidding party submitting bids at the foreclosure sale. If any such bidding party (the "Questioned Bidder") declines to comply with Trustee's requirement in this regard, or if such Questioned Bidder does respond but Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned Bidder (or, if applicable, the principal of such bidding party) to be inadequate, then Trustee may continue the bidding with reservation; and in such event (1) Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (2) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to Trustee, all bids by the Questioned Bidder shall be null and void. Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Trustor and Beneficiary, and elect to sell the Deed of Trust Property for credit or for a combination of cash and credit; provided, however, that Trustee shall have no obligation to accept any bid except an all cash bid. In the event Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by Trustee, then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(c) Partial Foreclosure. The sale by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Property shall be sold; and, if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the Secured Obligations and the expense of executing this trust as provided herein, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Trustor shall never have any right to require the sale of less than the whole of the Property but the Beneficiary shall have the right, at its sole election, to request Trustee to sell less than the whole of the Property. Trustee may, after any request or direction by the Beneficiary, sell not only the Property but also the Collateral and other interests which are a part of the Property, or any part thereof as a unit and as a part

of a single sale, or may sell any part of the Property separately from the remainder of the Property. It shall not be necessary for Trustee to have taken possession of any part of the Property or to have present or to exhibit at any sale any of the Collateral.

(d) Trustee's Deeds. Trustee shall make to the purchaser or purchasers at such sale good and sufficient conveyances in the name of Trustor, conveying the property so sold to the purchaser or purchasers with general warranty of title by Trustor, subject to the permitted encumbrances (and to such leases and other matters, if any, as Trustee may elect upon request of the Beneficiary), and shall receive the proceeds of said sale or sales and apply the same as herein provided. Payment of the purchase price to Trustee shall satisfy the obligation of purchaser at such sale therefor, and such purchaser shall not be responsible for the application thereof.

The power of sale granted herein shall not be exhausted by any sale held hereunder by Trustee or its substitute or successor, and such power of sale may be exercised from time to time and as many times as Beneficiary may deem necessary until all of the Property has been duly sold and all Secured Obligations have been fully paid. In the event any sale hereunder is not completed or is defective in the opinion of the Beneficiary, such sale shall not exhaust the power of sale hereunder and the Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder. Any and all statements of fact or other recitals made in any deed or deeds or other conveyances given by Trustee or any successor or substitute appointed hereunder as to nonpayment of the Secured Obligations or as to the occurrence of any default, or as to the Beneficiary's having declared all of the Secured Obligation to be due and payable, or as to the request to sell, or as to notice of time, place and terms of sale and the properties to be sold having been duly given, or as to the refusal, failure or inability to act of Trustee or any substitute or successor trustee, or as to the appointment of any substitute or successor trustee, or as to any other act or thing having been duly done by the Beneficiary or by such Trustee, substitute or successor, shall be taken as prima facie evidence of the truth of the facts so stated and recited. Trustee or its successor or substitute may appoint or delegate any one or more persons as agent to perform any ministerial act or acts necessary or incident to any sale held by Trustee, including the posting or filing of notices, but in the name and on behalf of Trustee, its successor or substitute. If Trustee or its successor or substitute shall have given notice of sale hereunder, any successor or substitute Trustee thereafter appointed may complete the sale and the conveyance of the property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

In the event there is a foreclosure sale hereunder and at the time of such sale, Trustor or Trustor's heirs, devisees, representatives, successors or assigns are occupying or using the Property, or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the Property occupied, such rental to be due daily to the purchaser; and to the extent permitted by applicable law, the purchaser at such sale shall, notwithstanding any language herein apparently to the contrary, have the sole option to demand immediate possession following the sale or to permit the occupants to remain as tenants at will. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain a summary action for possession of the property (such as an action for forcible detainer) in any court having jurisdiction.

(e) Deficiency. In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Trustor agrees as follows. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Trustor agrees that Beneficiary shall be entitled to seek a deficiency judgment from Trustor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or

nonjudicial foreclosure sale. Trustor expressly recognizes that this section constitutes a waiver of the above cited provisions of the Texas Property Code which would otherwise permit Trustor and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Trustor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Trustor, any guarantor, and others against whom recovery of a deficiency is sought.

Alternatively, in the event the waiver provided for in subsection (v) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five (5) years' experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

2. Suretyship Provisions.

(a) As used in this Section, the term "Obligated Party" shall mean each of Trustor and any other person obligated on, providing a guarantor or other surety of, or pledgor of collateral for the Secured Obligations, and the term "Obligated Parties" shall mean any two or more of such Obligated Parties, collectively.

(b) Beneficiary may bring an action against any Obligated Party, whether an action is brought against other Obligated Parties. It shall not be necessary for Beneficiary, in order to enforce this Deed of Trust, (1) first to institute suit or pursue or exhaust any rights or remedies against another Obligated Party or others liable on the Secured Obligations for such payment or performance, or to enforce any rights against any collateral that shall ever have been given to secure the Secured Obligations, or (2) to join an Obligated Party or any others liable for the payment or performance of the Secured Obligations or any part thereof in any action against other Obligated Parties or any other person, or to resort to any other means of obtaining payment or performance of the Secured Obligations. Provided, however, nothing herein contained shall prevent Beneficiary or any Beneficiary from suing on the Secured Obligations or foreclosing on any collateral or from exercising any other rights or remedies. Suit may be brought or demand may be made against any Obligated Party or against all parties who have signed this Deed of Trust, the Loan Documents or any guaranty covering all or any part of the Secured Obligations, or against any one or more of them,

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

separately or together, without impairing the rights of Beneficiary against any party hereto. Any time that Beneficiary is entitled to exercise its rights or remedies hereunder, it may in its discretion elect to demand payment and/or performance. If Beneficiary elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Secured Obligations have been paid and performed in full. If Beneficiary elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Secured Obligations have been paid and performed in full.

(c) Trustor agrees that any of the following will not release Trustor from the Secured Obligations:

(i) any partial or full release, whether express or by operation of law, which may be given by Beneficiary or any Beneficiary to the other Obligated Parties;

(ii) the death, insolvency, bankruptcy, disability, dissolution, liquidation, termination, receivership, reorganization, merger, consolidation, change of form, structure or ownership, sale of all assets, or lack of corporate, partnership or other power of any Obligated Party;

(iii) any limitation of liability or recourse in any of this Deed of Trust or a Loan Document or arising under any law;

(iv) the taking or accepting of any other security or guaranty for, or right of recourse with respect to, any or all of the Secured Obligations;

(v) any release, surrender, abandonment, exchange, alteration, sale or other disposition, subordination, deterioration, waste, failure to protect or preserve, impairment, or loss of, or any failure to create or perfect any lien or security interest with respect to, or any other dealings with, any collateral or security at any time existing or purported, believed or expected to exist in connection with any or all of the Secured Obligations, including any impairment of any Obligated Party's recourse against any person or collateral;

(vi) either with or without notice to or consent of an Obligated Party: with respect to any other Obligated Party, any renewal, extension, modification or rearrangement of the terms of any or all of the Secured Obligations and/or any of the Loan Documents, including, without limitation, material alterations of the terms of payment (including changes in maturity date(s) and interest rate(s)) or performance (including changes in the terms or aspects of construction of any improvements on the property securing the Note) or any other terms thereof, or any waiver, termination, or release of, or consent to departure from, any of the Loan Documents or any other guaranty of any or all of the Secured Obligations, or any adjustment, indulgence, forbearance, or compromise that may be granted from time to time by Beneficiary or any Beneficiary to any other Obligated Party;

(vii) any neglect, lack of diligence, delay, omission, failure, or refusal of Beneficiary or any Beneficiary to take or prosecute (or in taking or prosecuting) any action for the collection or enforcement of any of the Secured Obligations, or to foreclose or take or prosecute any action to foreclose (or in foreclosing or taking or prosecuting any action to foreclose) upon any security therefor, or to exercise (or in exercising) any other right or power with respect to any security therefor, or to take or prosecute (or in taking or prosecuting) any action in connection with any Loan Document, or any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Secured Obligations;

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

(viii) any failure of Beneficiary or any Beneficiary on one or more occasions to notify an Obligated Party, with respect to another Obligated Party, of any creation, renewal, extension, rearrangement, modification, supplement, subordination, or assignment of the Secured Obligations or any part thereof, or of any Loan Document, or of any release of or change in any security, or of any other action taken or refrained from being taken by Beneficiary or any Beneficiary against such other Obligated Party or any security or other recourse, or of any new agreement between Beneficiary or any Beneficiary and such other Obligated Party, it being understood that Beneficiary and the Beneficiaries shall not be required to give an Obligated Party any notice of any kind under any circumstances with respect to or in connection with any other Obligated Party, any and all rights to notice an Obligated Party may have otherwise had being hereby waived by each Obligated Party;

(ix) if for any reason Beneficiary or any Beneficiary is required to refund any payment by an Obligated Party to any other Obligated Party or pay the amount thereof to someone else;

(x) the existence of any claim, counterclaim, setoff, defense or other right that Trustor may at any time have against another Obligated Party, or any other person, whether or not arising in connection with this Deed of Trust, or any other Loan Document;

(xi) the unenforceability of all or any part of the Secured Obligations against another Obligated Party, whether because the Secured Obligations exceed the amount permitted by law or violate any usury law, or because the act of creating the Secured Obligations, or any part thereof, is ultra vires, or because the officers or persons creating same acted in excess of their authority, or because of a lack of validity or enforceability of or defect or deficiency in any of the Loan Documents, or because another Obligated Party has any valid defense, claim or offset with respect thereto, or because another Obligated Party's obligation ceases to exist by operation of law, or except with respect to Trustor, because of any other reason or circumstance, it being agreed that Trustor shall remain liable hereon regardless of whether another Obligated Party or any other person be found not liable on the Secured Obligations, or any part thereof, for any reason (and regardless of any joinder of another Obligated Party or any other party in any action to obtain payment or performance of any or all of the Secured Obligations); or

(xii) any order, ruling or plan of reorganization emanating from proceedings under the Bankruptcy Code with respect to another Obligated Party or any other person, including any extension, reduction, composition, or other alteration of the Secured Obligations with respect thereto, whether or not consented to by Beneficiary.

(d) Trustor shall not have any right to assert against Beneficiary any claim, counterclaim, defense or setoff which such Trustor may have against the other Obligated Parties or any other party liable to Beneficiary for the Secured Obligations.

(e) Trustor agrees that it is solely responsible for keeping itself informed as to the financial condition of the other Obligated Parties and of all circumstances which bear upon the risk of nonpayment. Trustor waives any right it may have to require Beneficiary to disclose to Trustor any information which Beneficiary may now or hereafter acquire concerning the financial condition of the other Obligated Parties.

(f) Trustor represents and warrants to Beneficiary that it has and will derive benefit, directly and indirectly, from the loans evidenced by the Loan Documents. Obligated Parties agree that Beneficiary will not be required to inquire as to the disposition by any Obligated Party of funds disbursed in accordance with the terms of the Loan Documents.

(g) Until all Secured Obligations have been paid in full, Trustor shall not have any right of subrogation in or under any of the Loan Documents or to participate in any way therein, or in any right, title or interest in and to any security or right of recourse for the indebtedness incurred under the Loan Documents, or any right to reimbursement, exoneration, contribution (contractual, statutory or otherwise), indemnification or any similar rights, including without limitation, any claim or right of subrogation under the Bankruptcy Code, which Trustor may now or hereafter have against any other Obligated Party with respect to the indebtedness incurred under the Loan Documents. Trustor shall not have any right to enforce any remedy which Beneficiary now has or may hereafter have against any other Obligated Party, or shall have any benefit of, or any right to participate in, any security now or hereafter held by Beneficiary.

(h) Trustor waives all rights and defenses that Trustor may have because the Obligated Parties' Loans are secured by real property. This means, among other things:

(i) Beneficiary may collect from each Obligated Party (including enforcing the Loan Documents against such Obligated Party's interest in the property secured thereby) without first foreclosing on any real or personal property collateral pledged by Trustor or any other Obligated Party.

(ii) If Beneficiary forecloses on any real property collateral pledged by Trustor or any other Obligated Party:

(a) The amount of the Secured Obligations may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. At any such sale of the collateral, Beneficiary may at its discretion purchase all or any part of the collateral so sold or offered for sale for its own account and may deduct the price bid from the Secured Obligations. The price at such foreclosure sale shall only be the net proceeds therefrom, after deduction of all charges and expenses of every kind and nature whatsoever.

(b) Beneficiary may collect from each Obligated Party (including enforcing the Loan Documents against such Obligated Party's interest) even if Beneficiary, by foreclosing on the real property collateral pledged by Trustor or the other Obligated Parties, has destroyed any right Trustor or such Obligated Party may have to collect from the other Obligated Parties.

(c) Beneficiary shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof.

This subsection is an unconditional and irrevocable waiver of any rights and defenses each Obligated Party may have because Obligated Parties' Loan is secured by real property.

(i) Trustor hereby expressly waives, any and all rights to which they may be entitled under any suretyship laws in effect from time to time, including any right or privilege, whether existing under statute, at law or in equity, to require Beneficiary to take prior recourse or proceedings against any collateral, security, any other Obligated Party or any other person. Trustor unconditionally and irrevocably waives any rights, defenses or remedies it may have under (1) Chapter 43 and Section 17.001 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 31, including without limitation, notice, discharge, levy and subrogation, and (2) Sections 51.003 through 51.005 of the Texas Property Code, relating to deficiency judgments.)

(j) In the event any payment by another Obligated Party or any other person to Beneficiary or any Beneficiary is held to constitute a preference, fraudulent transfer or other voidable payment under any bankruptcy, insolvency or similar law or theory, including any equitable remedy, or if for any other reason Beneficiary or any Beneficiary is required to refund such payment or pay the amount thereof to any other party, such payment by another Obligated Party or any other party to Beneficiary or any Beneficiary shall not constitute a release of Trustor or the Property from the Deed of Trust, and the Deed of Trust shall continue to be effective or shall be reinstated (notwithstanding any prior release, surrender or discharge by Beneficiary of the Secured Obligations or Trustor), as the case may be, with respect to and the Deed of Trust shall continue to send, any and all amounts so refunded by Beneficiary or any Beneficiary or paid by Beneficiary or any Beneficiary to another person (which amounts shall constitute part of the Secured Obligations), and any interest paid by Beneficiary and any attorneys' fees, costs and expenses paid or incurred by Beneficiary in connection with any such event. It is the intent of Trustor and Beneficiary that the obligations and liabilities of Trustor hereunder are absolute and unconditional under any and all circumstances and that until the Secured Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Trustor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Section, be deemed a legal or equitable discharge or release of Trustor.

(k) If acceleration of the time for payment of any amount payable by another Obligated Party under a Note, or any other Loan Document is stayed or delayed by any law or tribunal, all such amounts shall nonetheless continue to be secured by this Deed of Trust.

(l) If, for any reason whatsoever, another Obligated Party is now or hereafter becomes indebted to Trustor:

(i) such indebtedness and all interest thereon and all liens, security interests and rights now or hereafter existing with respect to property of the other Obligated Party securing same shall, at all times, be subordinate in all respects to the Secured Obligations and to all liens, security interests and rights now or hereafter existing to secure the Secured Obligations;

(ii) Trustor shall not be entitled to enforce or receive payment, directly or indirectly, of any such indebtedness of another Obligated Party to Trustor until the Secured Obligations have been fully and finally paid and performed;

(iii) Trustor hereby assigns and grants to Beneficiary a security interest in all such indebtedness and security therefor, if any, of another Obligated Party to Trustor now existing or hereafter arising, including any dividends and payments pursuant to debtor relief or insolvency proceedings referred to below. In the event of receivership, bankruptcy, reorganization, arrangement or other debtor relief or insolvency proceedings involving another Obligated Party as debtor, Beneficiary shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and shall have the right to receive directly from the receiver, trustee or other custodian (whether or not a Default shall have occurred or be continuing under any of the Loan Documents)), dividends and payments that are payable upon any obligation of another Obligated Party to Trustor now existing or hereafter arising, and to have all benefits of any security therefor, until the Secured Obligations have been fully and finally paid and performed. If, notwithstanding the foregoing provisions, Trustor should receive any payment, claim or distribution that is prohibited as provided above in this subsection, Trustor shall pay the same to Beneficiary immediately, Trustor hereby agreeing that it shall receive the payment, claim or distribution in trust for Beneficiary and shall have absolutely no dominion over the same except to pay it immediately to Beneficiary; and

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

(iv) Trustor shall promptly upon request of Beneficiary from time to time execute such documents and perform such acts as Beneficiary may require to evidence and perfect its interest and to permit or facilitate exercise of its rights under this subsection, including, but not limited to, execution and delivery of proofs of claim, further assignments and security agreements, and delivery to Beneficiary of any promissory notes or other instruments evidencing indebtedness of another Obligated Party to Trustor.

(m) If Trustor is or becomes liable, by endorsement or otherwise, for any indebtedness owing by another Obligated Party to Beneficiary, such liability shall not be in any manner impaired or affected hereby, and the rights of Beneficiary hereunder shall be cumulative of any and all other rights that Beneficiary may have against Trustor. If another Obligated Party is or becomes indebted to Beneficiary for any indebtedness other than or in excess of the Secured Obligations, any payment received or recovery realized upon any indebtedness of another Obligated Party to Beneficiary may, except to the extent paid by Trustor on the Secured Obligations or specifically required by law or agreement of Beneficiary to be applied to the Secured Obligations, in Beneficiary's sole discretion, be applied upon indebtedness of another Obligated Party to Beneficiary other than the Secured Obligations.

3. Release. Upon payment of all sums secured by this Deed of Trust, Lender shall provide a release of this Deed of Trust to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Deed of Trust, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

4. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Deed of Trust may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

5. Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

6. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

7. Partial Invalidity. In the event any portion of the sums intended to be secured by this Deed of Trust cannot be lawfully secured hereby; payments in reduction of such sums shall be applied first to those portions not secured hereby.

8. Express Negligence Rule. IT IS THE EXPRESS INTENTION OF TRUSTOR AND TRUSTOR HEREBY AGREES THAT EACH AND EVERY INDEMNITY SET FORTH IN THIS DEED OF TRUST OR IN ANY OF THE OTHER LOAN DOCUMENTS WILL APPLY TO AND FULLY PROTECT EACH INDEMNIFIED PARTY EVEN THOUGH ANY CLAIMS, DEMANDS,

LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES) THEN THE SUBJECT OF INDEMNIFICATION MAY HAVE BEEN CAUSED BY, ARISE OUT OF, OR ARE OTHERWISE ATTRIBUTABLE TO, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE (EXCLUDING GROSS NEGLIGENCE OR WILLFUL MISCONDUCT) IN WHOLE OR IN PART OF SUCH INDEMNIFIED PARTY AND/OR ANY OTHER PARTY.

9. Notice of Final Agreement. THIS DEED OF TRUST, THE WRITTEN LOAN AGREEMENT, AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

10. Waiver of Consumer Rights. TRUSTOR REPRESENTS AND ACKNOWLEDGES THAT TRUSTOR IS A "BUSINESS CONSUMER" FOR PURPOSES OF THE TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., TEXAS BUSINESS AND COMMERCE CODE, AS FROM TIME TO TIME AMENDED (THE "ACT"), AND THAT TRUSTOR HAS BEEN REPRESENTED BY TEXAS COUNSEL OF ITS SELECTION (WHO HAS NOT BEEN DIRECTLY OR INDIRECTLY IDENTIFIED, SUGGESTED OR SELECTED BY BENEFICIARY, ANY BENEFICIARY OR ANY OF THEIR AGENTS) IN CONNECTION WITH THE LOAN AGREEMENT AND NOTE AND THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT AND NOTE AND THE RELATED LOAN DOCUMENTS, AND THAT TRUSTOR HEREBY WAIVES THE APPLICABILITY OF THE PROVISIONS OF THE ACT WITH RESPECT TO THE LOAN AGREEMENT AND NOTE AND SUCH TRANSACTIONS IF AND TO THE EXTENT THAT THE ACT WOULD APPLY TO ANY OF SAME.

**TRUSTOR WAIVES ITS RIGHTS UNDER THE ACT, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF ITS OWN SELECTION, TRUSTOR HEREBY VOLUNTARILY CONSENTS TO THIS WAIVER.**

11. Homestead. Trustor represents and covenants that the Property forms no part of any property owned, used or claimed by Trustor as a business or residential homestead, or as exempt from forced sale under the laws of the State of Texas, and disclaims and renounces all and every such claim thereto.

12. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.

**Check box as applicable:**

☐ **Purchase Money**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Deed of Trust conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Deed of Trust being additional security for such vendor's lien.

☐ **Owelty of Partition**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Deed of Trust as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this paragraph.

NOW, THEREFORE, If the Note and any Indebtedness secured by this Deed of Trust shall be well and truly paid according to their tenor and if all the terms, covenants, conditions, and agreements of the Trustor contained herein and in the Note and Loan Documents, shall be fully and faithfully performed, observed, and complied with, then this Deed of Trust deed shall be void, but shall otherwise remain in full force and effect.

[*No further text on this page; signatures appear on the following page*]

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**IN WITNESS WHEREOF**, Trustor has executed this Deed of Trust as of the November 25, 2024

**Trustor:**
**JDS-Q SERVICES, LLC**

By: ______________________
Name: LaQuonda Brewer
Title: Sole Member

Witnessed by:

______________________
Name:

______________________
Name:

STATE OF Texas )
)ss.:
COUNTY OF Dallas )

I certify that on November 25, 2024 LaQuonda Brewer came before me in person and stated to my satisfaction that he/she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Sole Member of JDS-Q SERVICES, LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and members.

______________________
NOTARY PUBLIC

TEWANZA TANNER-WILLIAMS
NOTARY PUBLIC
STATE OF TEXAS
ID 125243324
EXP. 09-24-2025

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP

**SCHEDULE A**
**PROPERTY DESCRIPTION**

**Lot 747, Block 1, LAKE RIDGE SECTION 11, an Addition to the City of Grand Prairie, Dallas County, Texas, according to the Map or Plat thereof recorded in Volume 97218, Page 686, of the Map Records of Dallas County, Texas.**

Property address is commonly known as: 1035 Lighthouse Court, Grand Prairie, TX 75104

**SCHEDULE B**
**PERMITTED ENCUMBRANCES**

As outlined on Schedule B of the Lenders title policy.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

LaQuonda Brewer, Sole Member of JDS-Q SERVICES, LLC

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **November 25, 2024** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **BD CAPITAL SE LLC** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1035 Lighthouse Court, Grand Prairie, TX 75104**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in ______________________________ (the "Declaration").

The Property is a part of a planned unit development known as
Property Owners Association of Lake Ridge
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**Exhibit "C"**




Owner Search | Address Search | Account Search | Fiduciary Search

## Property Tax Balance

All tax information refers to the 2026 Tax Year, unless otherwise noted, i.e. "Prior Year Amount Due". Amounts due include penalty, interest, and collection fees if applicable.

**Account Number:** **28027900017470000**

**Address:**
JDSQ SERVICES LLC
1035 LIGHTHOUSE CT
CEDAR HILL, TX 75104-0000

**Property Site Address:**
1035 LIGHTHOUSE CT, CP

**Legal Description:**
LAKE RIDGE SEC 11
BLK 1 LT 747 ACS 1.23
INT202300214757 DD10192023 CO-DC
0279000174700 4CP02790001

**Current Tax Levy:** $23,467.25

**Current Amount Due:** $23,467.25

**Prior Year Amount Due:** $15,187.63

**Total Amount Due:** $38,654.88

PAY NOW

Large dollar payments may cause your issuing bank to question this transaction. Contact your financial institution to inform them of the amount you will be paying to avoid delays in processing your payment.

eStatement Enrollment

**Enroll in eStatements to receive your Dallas County Tax Statements electronically.**

**Market Value:** $1,000,000

**Land Value:** $202,950

**Improvement Value:** $797,050

**Capped Value:** $0

**Agricultural Value:** $0

**Exemptions:** None

Current Tax Statement

Summary Tax Statement

Taxes Due Detail by Year and Jurisdiction

Payment Plan Options

Payment Information

Composite Receipt (pending payments are not included)

Request an Address Correction

Click Here to see your estimated amount due for a future date. You can see this information by year and by both year and jurisdiction.

*Make your check or money order payable to:*
***JOHN R. AMES, PCC, CTA, TAX ASSESSOR/COLLECTOR***
***Dallas County Tax Office***
***P O BOX 139066***
***DALLAS, TEXAS 75313-9066***

Go to Your Portfolio | Tax Office Home Page

Terms of Use Privacy Policy

**Disclaimer:** The Dallas County Tax Office provides this World Wide Web (WWW) site information and services "as is" without warranty of any kind, either expressed or implied. The Dallas County Tax Office does not warrant the accuracy, authority, completeness, usefulness, timeliness, or fitness for a particular purpose of its information or services. The Dallas County Tax Office, its officials and employees shall not be liable for any loss or injury caused in whole or part by its negligence, contingencies beyond its control, loss of data, or errors or omissions in the WWW site information or services.

DALLAS COUNTY TAX OFFICE
500 Elm Street
Dallas, Texas 75202
214-653-7811

*©Appraisal & Collection Technologies.*
*All rights reserved.*